# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

DATE: April 24, 2006

TO: John M. Waters
United States District Court
Central District of Illinois
Room 309
100 N.E. Monroe Street
Peoria, IL 61602

FROM: Gino J. Agnello, Clerk

RE: 05-1988, 05-1989
USA v. Watkins, Shane T.
01 CR 10001, 04 CR 10037, Joe Billy McDade, Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

[ ] No record filed
[X] Original record on appeal consisting of:

| ENCLOSED: | | TO BE RETURNED AT LATER DATE: |
|---|---|---|
| [1] | Volumes of pleadings | [ ] |
| [ ] | Volumes of loose pleadings | [ ] |
| [ ] | Volumes of transcripts | [ ] |
| [ ] | Volumes of exhibits | [ ] |
| [ ] | Volumes of depositions | [ ] |
| [1] | In Camera material | [ ] |
| [ ] | Other_____ | [ ] |
| | Record being retained for use in Appeal No. _____ | [ ] |

Copies of this notice sent to:     Counsel of record
[X]     United States Marshal
[X]     United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date: _____    _____
(1071-120397)                             Deputy Clerk, U.S. District Court

E-FILED
Tuesday, 25 April, 2006 02:12:34 PM
Clerk, U.S. District Court, ILCD

FILED
APR 2 5 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

JUDGMENT - WITH ORAL ARGUMENT

Date: March 31, 2006

BEFORE:  Honorable JOHN L. COFFEY, Circuit Judge

Honorable DIANE P. WOOD, Circuit Judge

Honorable TERENCE T. EVANS, Circuit Judge

Nos. 05-1988 & 05-1989

UNITED STATES OF AMERICA,
        Plaintiff - Appellee

v.

SHANE T. WATKINS,
        Defendant - Appellant

Appeal from the United States District Court for the Central District of Illinois, 100 N.E. Monroe Street
No. 01 CR 10001, Joe Billy McDade, Judge

    The appeal in case number 05-1988 is DISMISSED and the judgment in case number 05-1989 is AFFIRMED. The above is in accordance with the decision of this court entered on this date.

(1061-110393)

UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53



# United States Court of Appeals
For the Seventh Circuit
Chicago, Illinois 60604

Argued February 28, 2006
Decided March 31, 2006

Before

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Nos. 05-1988 & 05-1989

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>SHANE T. WATKINS,<br>*Defendant-Appellant.* | Appeals from the United States District Court for the Central District of Illinois<br><br>Nos. 04 CR 10037 & 04 CR 10001<br><br>Joe Billy McDade,<br>*Judge.* |

## ORDER

Shane Watkins was on supervised release for a federal drug offense when police officers in Peoria, Illinois, executed a search warrant at his apartment and found a total of 54.7 grams of crack in two separate bags in the master bedroom where he was hiding. Federal authorities charged him with possession of 50 or more grams of crack with intent to distribute. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A). Watkins moved to suppress incriminating statements made to police during the search; he argued that an officer elicited the statements after he invoked his Fifth Amendment rights to remain silent and to have counsel present during questioning. The district court granted the motion as to some statements, but denied it as to others. A jury found Watkins guilty, and given the amount of crack and his prior drug convictions, the district court sentenced him to a statutorily mandated life term. The court also revoked Watkins's supervised release and added one

additional day of imprisonment. Watkins appeals both judgments. Because he makes no argument about the revocation of supervised release, that appeal is dismissed. As to the new conviction, he challenges the ruling on his motion to suppress.

At the suppression hearing, Officer Tim Moore testified that, as part of an ongoing drug investigation, police obtained and executed a search warrant for Watkins's apartment in Peoria. Upon entry, police detained Leemon Daniels as he ran toward the living room and found Watkins lying on the floor of the master bedroom between the bed and the wall; on the nightstand next to him was approximately 28 grams of crack. Officers subsequently found another 28 grams of crack in the pocket of a jacket hanging in the bedroom closet. Police detained Watkins in a bathroom where Moore read him a copy of the search warrant as well as the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966). Moore testified that Watkins said he did not wish to talk, but asked the officer why the police were there and why they had a search warrant. Officer Moore explained that cocaine was being sold from the apartment but advised Watkins that, if he wished to continue the conversation, Moore would ask a witness to be present. Watkins responded, "I'm out of the game. I'm through," which Moore understood to mean that Watkins did not wish to talk further. Believing Watkins was invoking his right to remain silent, Moore ceased all interrogation and left after obtaining Watkins's permission to search his car.

When Officer Moore returned, he told Watkins he needed to question his girlfriend and asked if she was at work. Watkins confirmed that she was but asked why they wanted to question her. Moore explained that officers found cocaine in a woman's jacket and needed to question her since he would not give a statement. Watkins remarked that she "would take the weight" for him.

Officer Loren Marion, who was assigned to prepare Watkins for transport to the jail, also testified at the hearing. Because Watkins was wearing only boxer shorts, Marion gave him a pair of sweatpants from the bedroom and helped him put them on. The officer explained that he recognized Watkins from a previous arrest involving a high-speed car chase and told him: "Man, you really got big. You bulked up and lost a lot of weight." Marion told him the car chase was one of his "most memorable experiences as a police officer," and asked if he remembered him. According to Marion, Watkins laughed and said, "yeah."

After this exchange, Officer Marion testified, he turned to leave the bathroom, and Watkins said: "See you in the next lifetime. I'm going away for a long time." Marion replied, "All right," and Watkins continued: "Hey, talk to your boy for me. Tell him that my girl didn't have anything to do with this. Let her have

peace. My guy in the front didn't have anything to do with this either. It was all me." Marion told Watkins he would relay his message to Officer Moore.

At the conclusion of the hearing, the district court suppressed some but not all of Watkins's statements: "The statements made to Officer Moore other than in reference to searching the car would be suppressed. The statements made to Officer Marion will not be suppressed." Although the judge (District Judge Joe Billy McDade) did not elaborate on his reasoning at the hearing, he explained during a sidebar discussion during the trial that he did not suppress Watkins's statements to Officer Marion because nothing that Marion said was likely to elicit an incriminating response: "I did not find the conversation that Officer Marion had with the defendant as inviting [him] to make something inculpating himself." When defense counsel argued that Marion should have videotaped the statement from Watkins, the judge responded: "[T]hat wasn't his job . . . . I thought my ruling was that that was . . . a voluntary statement by the defendant. . . . He wasn't being interrogated by Officer Marion." Defense counsel pressed the issue, leading Judge McDade to reiterate: "I thought the testimony today was that Marion went back inside to give the defendant some sweatpants. He commented about the defendant's excessive weight loss. The defendant then makes some statements to him which he did not invite. That's my ruling."

Watkins argues that his statements to Officer Marion should have been suppressed because they were made in response to interrogation after he invoked his right to counsel. He also asserts that Judge McDade "failed to make any findings of fact or to address the credibility of the witnesses" during the suppression hearing and that this perceived omission provides sufficient grounds to reverse his conviction and remand the case for a new trial without the government getting the benefit of his statements to Marion. We disagree.

In reviewing a suppression ruling, we review legal questions *de novo* and underlying factual determinations for clear error. *United States v. Cellitti*, 387 F.3d 618, 621 (7th Cir. 2004). Where there is evidence to support a factual determination, it will be deemed clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997); *accord United States v. Trevino*, 60 F.3d 333, 336 (7th Cir. 1995). For purposes of this court's review, the "entire evidence" consists of evidence introduced both at the suppression hearing and at the trial itself. *Trevino*, 60 F.3d at 336; *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994).

In deciding whether to grant or deny a motion to suppress, a district court need not make specific factual findings, but must adequately explain its decision so that we may review the record in "a reasoned and meaningful manner." *United*

*States v. Fields*, 371 F.3d 910, 916 (7th Cir. 2004); *accord United States v. Boden*, 854 F.2d 983, 991 (7th Cir. 1988); *United States v. Talkington*, 843 F.2d 1041, 1048 (7th Cir. 1988). Where a district court fails to do so, the remedy is not a reversal of a conviction, as Watkins suggests, but rather a limited remand directing the district court to more fully explain the reasoning behind its decision. *See, e.g., United States v. Johnson*, 427 F.3d 1053, 1055 (7th Cir. 2005); *Fields*, 371 F.3d at 912; *United States v. Brown*, 79 F.3d 1499, 1510-11 (7th Cir. 1996); *Talkington*, 843 F.2d at 1049-50.

Here, the judge fully explained during the trial sidebar why he did not suppress Watkins's statements to Officer Marion—the officer was not interrogating Watkins when he voluntarily assumed full responsibility for the drugs in the apartment. Further, Marion's statements to Watkins were not likely to elicit incriminating responses.

Given that we may consider the trial *evidence* in reviewing a ruling on a motion to suppress, logic dictates that we also may consider the entire record to understand the district court's *reasons* for its suppression ruling. In civil appeals where reasons are required by Circuit Rule 50, we look to the entire record for those reasons if they are not readily apparent from a challenged ruling, *see Ross Bros. Constr. Co. v. Int'l Steel Services, Inc.*, 283 F.3d 867, 872 (7th Cir. 2002) (explaining that remand for clarification is not warranted where district court's reasons for its decision "are apparent from the record"); *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1218 (7th Cir. 1990) (same), and there is no reason to do less in the criminal context. A review of the entire record here provides more than enough explanation for why Watkins's suppression motion was denied. And this allows us to engage in meaningful review. *See Fields*, 371 F.3d at 916.

As to the merits, Watkins argues that his statements to Officer Marion should have been suppressed because Marion "interrogated" him after he invoked his right to remain silent. The government concedes that Watkins invoked his Fifth Amendment right to counsel, and thus the Peoria police officers were required to cease all interrogation until counsel was present unless Watkins himself reinitiated the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981); *United States v. Johnson*, 415 F.3d 728, 731 (7th Cir. 2005); *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005); *United States v. Briggs*, 273 F.3d 737, 741 (7th Cir. 2001). The parties accordingly frame the debate in terms of whether Marion "interrogated" Watkins.

Interrogation includes "express questioning" as well as "any words or actions . . . that the police should know are likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). We have interpreted

the question under *Innis* to be whether an objective observer would have believed that the officer's statement to the defendant was reasonably likely to elicit an incriminating response. *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002); *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997); *United States v. Cooper*, 19 F.3d 1154, 1162 (7th Cir. 1994). On the other hand, voluntary statements made after an accused invokes his Fifth Amendment rights are not subject to suppression if they were not made in response to police questioning. *See Edwards*, 451 U.S. at 485 (explaining that neither the Fifth nor Fourteenth Amendments prohibit police from "merely listening" to an accused's voluntary statements and using them against him at trial); *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment."). No matter what a police officer's intention might be, he does not interrogate a suspect "simply by hoping that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987); *accord Briggs*, 273 F.3d at 741.

Here, Judge McDade held that Watkins's statement was not made in response to interrogation from Marion. Watkins argues that the judge should have concluded that Marion's statements were "interrogation" because he was merely playing the role of the "good cop" in an attempt to undermine Watkins's resolve not to incriminate himself. But Watkins fails to support this argument with any discussion of analogous cases—perhaps because the law favors the government's position that Marion's comments about Watkins's physique and the car chase are not the type of comments that an objective observer would expect to prompt Watkins to make incriminating statements. *See, e.g., Easley v. Frey*, 433 F.3d 969, 971, 974 (7th Cir. 2006) (upholding finding that officer was not interrogating suspect where he informed him of the charges that he faced and explained that, if convicted, he could be sentenced to death); *Abdulla*, 294 F.3d at 832, 834-35 (upholding denial of motion to suppress where defendant spontaneously confessed to robbing a bank while customs agents searched his bags); *Briggs*, 273 F.3d at 741 (explaining that suppression of statements not warranted where officer, concerned that the accused was suicidal, asked him what he meant when he said he was "going to die" and accused responded with an incriminating statement). Furthermore, even if Officer Marion thought his statements *might* lead to a confession, that belief would not be enough to conclude that he was interrogating Watkins unless he should have known the statements were *likely* to elicit an incriminating response. *See Mauro*, 481 U.S. at 529; *Easley*, 433 F.3d at 974; *Briggs*, 273 F.3d at 741; *Endress v. Dugger*, 880 F.2d 1244, 1248-49 (11th Cir. 1989). Marion's comments did not relate to the search of Watkins's apartment or the contraband found there, and they would not seem to an observer likely to elicit a confession.

Accordingly, the appeal in case number 05-1988 is DISMISSED and the judgment in case number 05-1989 is AFFIRMED.